## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

FRANK ROMERO, individually and also
d/b/a Trend Deploy, Trendeploy, trendeploy,
trendeploy.com, Frank Romero Advertising,
and Uvenux,

    Defendant.

CASE NO. 5:21-cv-343

## PLAINTIFF FEDERAL TRADE COMMISSION'S RESPONSE IN OPPOSITION TO DEFENDANT FRANK ROMERO'S MOTION TO DISMISS

The FTC brought this action against Defendant Frank Romero for taking advantage of consumers' fear of COVID-19 by falsely advertising he had Personal Protective Equipment ("PPE"), including N95 facemasks, available for quick delivery.  Romero now seeks dismissal of the FTC's complaint, ECF No. 1 ("Complaint"), on two grounds.  *See* ECF No. 9 ("Mot.").  First, he asserts the FTC fails to state a claim under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).  Second, he asserts that the FTC is not entitled to relief under Section 19 of the FTC Act, 15 U.S.C. §57b, for his violations of the FTC Act pursuant to the COVID-19 Consumer Protection Act ("CCPA").  Both arguments are without merit, and both fail to address specific factual allegations in the Complaint.  Finally, Romero does not contest the sufficiency of the FTC's claims for monetary relief for his violations of the Mail, Internet, or Telephone Order Merchandise Rule ("MITOR") pursuant to

Section 19, nor does he contest the sufficiency of the FTC's claim for civil penalties pursuant to Section 5(m)(1)(A) of the FTC Act.

## I.    LEGAL STANDARD

A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  It need not make "detailed factual allegations" because its purpose is only to "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  To survive a motion to dismiss, the facts alleged in the complaint need to do more than merely speculate or raise suspicion about a claim for relief.  *Id.*

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all factual allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff."  *Drexler v. Trans Union, LLC*, 2020 WL 8299761, at *1 (M.D. Fla. Dec. 15, 2020) (Moody, J.) (citing *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007)).  This review includes "drawing all reasonable inferences in favor of the plaintiff."  *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1092-93 (11th Cir. 2016).  Taken together, so long as these facts and inferences amount to a "plausible" claim for relief, the motion to dismiss should be denied.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Accordingly, motions to dismiss for failure to state a claim are "viewed with disfavor and rarely granted."  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (*per curiam*) (citations omitted).

## II.   ARGUMENT

### a.   Section 13(b) of the FTC Act Authorizes a Permanent Injunction for Romero's Conduct (Response to Section II.B of Romero's Brief as to Motion to Dismiss Counts I and II).

Romero argues that because his violations of the FTC Act and MITOR had ceased by the time the Commission filed its complaint, Section 13(b) of the FTC Act provides no basis to seek a permanent injunction against Mr. Romero.  Mot. at 14.[1] Tellingly, despite noting that the Court's analysis in statutory construction cases must "begin[] with the language of the statute," Mot. at 13, Romero spends no time discussing the first clause of Section 13(b), which states:  "*Whenever the Commission has reason to believe* -- that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission . . . the Commission may seek, and after proper proof, the court may issue, a permanent injunction."  15 U.S.C. § 53(b) (emphasis added).

Ignoring the plain language of Section 13(b) is fatal to Romero's motion. Based on the specific allegations in the complaint, the FTC had reason to believe that [Romero] is violating or is about to violate laws enforced by the Commission.  *See* Complaint ¶98; *see also id.* ¶¶95-98.  Accordingly, Romero's motion must be denied.

---

[1] Romero also argues that Section 13(b) is "limited to only injunctive relief, not monetary relief," and that "there is no other basis for the Commission to invoke §13(b)."  Mot. at 15.  Of course, the FTC did not seek monetary relief under Section 13(b) of the Act for Romero's violations of Section 5 in its complaint.  *See* Complaint at 37-38.

### 1. The FTC Determines Whether it Has "Reason to Believe" that Romero "Is Violating, or is About to Violate" the FTC Act, and Adequate "Reason to Believe" Includes Where the Conduct Ceased as a Direct Result of Government Intervention.

Section 13(b) of the FTC Act authorizes courts to issue permanent injunctions when a defendant violates any law enforced by the FTC and is likely to continue to violate such laws. *See, e.g.*, *FTC v. USA Fin., LLC*, 415 F. App'x 970, 975 (11th Cir. 2011). Specifically, Section 13(b) provides the FTC may obtain permanent injunctions for violations of "any provision of law enforced by the FTC." 15 U.S.C. § 53(b).

The plain language of Section 13(b) details when the FTC may obtain a permanent injunction in federal district court. Specifically, the FTC may file a complaint in federal district court seeking a permanent injunction whenever *the Commission determines* it has "reason to believe . . . that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission." 15 U.S.C. § 53(b) (emphasis added).

The "reason to believe" standard limits court review to whether some evidence supports the FTC's reason to believe in order to ensure that the agency is not acting in bad faith. *See FTC v. Hornbeam Special Situations, LLC*, 391 F. Supp. 3d 1218, 1223 (N.D. Ga. 2019); *AMREP Corp. v. FTC*, 768 F.2d 1171, 1177 (10th Cir. 1985) ("All that the law requires is that the FTC actually had some 'reason to believe'—that is, that it has conducted an investigation—before it issued a complaint."); *Standard Oil Co. of California v. FTC*, 596 F.2d 1381, 1386 (9th Cir.

4

1979) (only "complete absence of a 'reason to believe' determination" would violate "reason to believe" requirement), *rev'd on other grounds*, 449 U.S. 232 (1980).[2]

The FTC has more than sufficient reason to believe a person is violating, or is about to violate, any provision of law the Commission enforces where the defendant ceases his conduct as a direct result of governmental intervention.  *See, e.g.*, *FTC v. Sage Seminars, Inc.*, 1995 WL 798938, at *6 (N.D. Cal. Nov. 2, 1995) (finding that "defendants' claimed cessation of conduct which occurred only *after* defendants learned that the FTC had commenced an investigation into Sage's practices" could "hardly be considered 'voluntary'") (emphasis in original); *FTC v. Triangle Media Corp.*, 2018 WL 6305675, at *1 (S.D. Cal. Dec. 3, 2018) (in granting FTC's motion to amend complaint to add new defendant, holding that "[a]bsent the FTC's enforcement action, there would be little doubt [that new defendant] would still be "violating" or "about to violate" the law in just the same way the corporate defendants were "violating" or "about to violate" the law prior to the Court's injunction"); *FTC v. Elec. Payment Sols. of Am. Inc.*, 2019 WL 4287298, at *9 (D. Ariz.

---

[2] Some courts go further and decline to review decisions made subject to an agency's discretion.  *See FTC v. Nat'l Urological Grp., Inc.*, 2006 WL 8431977, at *3 (N.D. Ga. Jan. 9, 2006) ("In this case, the Act allows the FTC to bring suit if it has 'reason to believe' that a violation of the Act is occurring or about to occur and it believes that the proceeding will be in the 'public interest.'  These provisions do not furnish the court with a meaningful standard by which to measure the lawfulness of the FTC's actions.  In the absence of standards by which the court is to measure the FTC's actions, review is impossible. . . . "); *Boise Cascade Corp. v. FTC*, 498 F. Supp. 772, 779 (D. Del. 1980) ("[A]n agency has full discretion in deciding what information is relevant, and what evidence is sufficient for a 'reason to believe' determination. . . . The court finds that such indications [of bad faith] are absent in this case, and that it will therefore not inquire into the agency's 'reason to believe' determination").

Aug. 28, 2019) ("[C]ourts should be wary of a defendant's termination of illegal conduct when a defendant voluntarily ceases unlawful conduct in anticipation of formal intervention.").  Underpinning these rulings is the principle that the "defendant is free to return to his old ways" if he can moot his own case, and "courts have rightly refused to grant defendants such a powerful weapon against law enforcement."  *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (also noting that "[i]t is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption," *see id.* at 632 n.5).

Moreover, the Commission had reason to believe Romero was violating, or was about to violate, the law even if his conduct had ceased prior to contact by the Commission.  Specifically, past conduct can provide the Commission with adequate "reason to believe."  For example, in the *Hornbeam* case, the Northern District of Georgia held:

> 15 U.S.C. § 53(b) specifically provides that the FTC may bring suit in a district court "*[w]henever the Commission has reason to believe*" the law is about to be violated. (Emphasis added).  The standard established in § 53(b) is not necessarily an objective one.  If there was some information to suggest that the FTC's motive for filing suit was merely vindictive, or if the Complaint did not contain any factual allegations from which to infer that the law was about to be violated, then the FTC would clearly lack a "reason to believe" and dismissal would be proper.  Here, however, the FTC has alleged facts about past bad behavior which includes a pattern of reoccurrence.  Thus, the Complaint sets forth at least some facts to support a reasonable inference that the behavior will reoccur in the future in the absence of [permanent] injunctive relief. At this stage of the litigation, the FTC has pled sufficient facts to state a plausible claim under § 53(b) and to survive the Defendants' Rule 12(b)(6) motions.

6

*Hornbeam Special Situations, LLC*, 391 F. Supp. 3d at 1223.  That courts would credit the Commission's evaluation of past conduct in its determination of whether a defendant "is about to violate" the law is unsurprising.  Indeed, permanent injunctive relief under Section 13(b) is only appropriate at the conclusion of the case where 'the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.'"  *FTC v. RCA Credit Servs., LLC*, 727 F. Supp. 2d 1320, 1335 (M.D. Fla. 2010) (quoting *SEC v. Caterinicchia*, 613 F.2d 102, 105 (5th Cir.1980)).

Romero cites no contrary authority.  Three of the cases he relies on do not even discuss what constitutes adequate "reason to believe."  *See FTC v. Shire ViroPharma*, 917 F.3d 147, 159 n.17 (3d Cir. 2019) (expressly declining to consider what constitutes "reason to believe"); *AMG Cap. Mgmt., LLC v. FTC*, 141 S.Ct. 1341, 1348 (2021) (evaluating statutory language in context of the FTC seeking restitution, but not discussing what "reason to believe" means); *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 772-75 (7th Cir. 2019) (same).  In the fourth case, *FTC v. Evans Products Co.*, 775 F.2d 1084 (9th Cir. 1985), the Ninth Circuit reaffirmed past conduct could provide the basis for injunctive relief where a district court finds that the conduct was "likely to recur."  *Id.* at 1088.

Although the fifth case, *FTC v. AdvoCare International, L.P.*, 2020 WL 6741968 (E.D. Tex. Nov. 16, 2020), found that the Commission did not have adequate "reason to believe," it is readily distinguishable.  In *Advocare*, the court found "the primary mechanism of the [defendants'] alleged wrongdoing [] had been

7

permanently defunct for months" and the "sole business through which the [defendants] allegedly undertook such actions [] had, either before or simultaneous to the Complaint's filing, entered into a comprehensive agreement to halt [its] unlawful activities, reform its business practices, and submit to government compliance monitoring." *Id.* at *5.  As discussed below, the facts here are entirely different.

### 2.   The FTC Has Reason to Believe Romero is Violating or is About to Violate Laws the FTC Enforces.

Here, the FTC determined it "has reason to believe that Defendant is violating or is about to violate laws enforced by the Commission."  Complaint ¶98.  This is because: (1) Romero's conduct only ceased following government intervention; (2) his conduct was egregious; and (3) Romero retains the capacity to resume his conduct.  Indeed, in the Complaint, FTC explicitly specified the facts it relied upon to make this decision.  *See* Complaint ¶¶95-98.

First, Romero removed the false claims from his website regarding his sale of "Class N95" or KN95 facemasks no earlier than March 19, 2021, more than four months after the FTC put him on notice of its investigation.  *Id.* ¶95.  Second, despite notice he was violating the law, Romero persisted in making deceptive claims.  *Id.* Third, Romero only removed the fake FDA certificate from his website "after the FTC served a Civil Investigative Demand on him and conducted its investigational hearing of [Romero] on December 3, 2020."  *Id.* ¶97.

These facts are more than sufficient to establish the FTC's "reason to believe" that Romero "is about to violate" the law.  Indeed, before the FTC became involved,

Romero continued his deception despite knowing of numerous complaints and messages from consumers and service providers regarding the lack of substantiation for his claims. *Id.* ¶96.

Moreover, Romero's alleged conduct, which ceased only three months before the filing of this lawsuit, was egregious. Romero marketed his products for over one year during a pandemic while millions became ill with COVID-19, and hundreds of thousands died of it. Complaint ¶¶ 8-12, 49, 95. During that time, he (1) marketed N95 facemasks that were actually less effective cloth masks, *see id.* ¶¶ 51-66, 98; (2) posted fake government certifications to his website and provided those fake certifications to inquiring consumers, *see id.* ¶¶55, 78-94, 97-98; (3) offered quick shipping and delivery times for which he had no basis to represent so that people would order masks from him for protection, *see id.* ¶¶33-48, 98; and (4) refused to promptly refund consumers, and in many cases failed to provide any refund, when he could not meet his promised shipping times, *id.* ¶¶44-48. His website, trendeploy.com, remains operational. *Id.* ¶98. Thus, he retains the ability to resume making these claims at any time. *Id.* Accordingly, the FTC had sufficient reason to believe that Romero is about to violate the laws it enforces. Moreover, conduct of this nature necessitates permanent injunctive relief because there is future threat of recurrence. *See USA Fin., LLC*, 415 F. App'x at 975.

b. **The FTC Stated a Claim Under Section 19 of the FTC Act for Violations of the FTC Act Pursuant to the CCPA (Response to Section II.C of Romero's Brief as to Motion to Dismiss Count II).**

Romero contends that the FTC fails to state a claim under Section 19 of the

FTC Act for two reasons.  First, he claims the FTC, in making the Section 19 claim, "fail[ed] to plead that it obtain a 'cease and desist order'" against Romero.  Mot. at 15.  Second, he argues "there is no factual support to indicate that Trend Deploy made any representations on treating, curing, preventing, mitigating, or diagnosing COVID-19."  These arguments are both legally and factually infirm.

> **1.    Because Under the CCPA, Congress Deemed Violations of the FTC Act to be Treated as a Rule Violation, Section 19 Monetary Relief is Available.**

In arguing that the FTC must first obtain a cease and desist order before it can obtain monetary relief in federal court, Romero cites Section 19(a)(2) of the FTC Act.  *See* Mot. at 11-12, 16-17.  However, Romero ignores Section 19(a)(1), which provides:

> If any person, partnership, or corporation violates any rule under this subchapter respecting unfair or deceptive acts or practices (other than an interpretive rule, or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of Section 45(a) of this title), then the Commission may commence a civil action against such person, partnership, or corporation for relief under subsection (b) in a United States district court.

15 U.S.C. § 57b(a)(1).  Section 19(b) of the FTC Act, 15 U.S.C. §57b(b), then provides that a federal court "shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers . . . resulting from the rule violation." This relief "may include, but shall not be limited to, rescission or reformation of contracts, the refund or return of property, the payment of damages, and public notification respecting the rule violation." *Id.*

When Congress enacted the CCPA, it specifically provided "[a] violation of

subsection (b) shall be treated as a violation of a rule defining an unfair or deceptive act or practice prescribed under section 18(a)(1)(B) of the [FTC] Act (15 U.S.C. § 57a(a)(1)(B))." *See* Public Law 116-260, 134 Stat. 1182, Title XIV, Section 1401(c)(1).  Subsection (b) provides that "[f]or the duration of a public health emergency declared pursuant to section 319 of the Public Health Service Act [] as a result of confirmed cases of the 2019 novel coronavirus (COVID-19)," "it shall be unlawful for any person, partnership, or corporation to engage in a deceptive act or practice in or affecting commerce in violation of section 5(a) of the [FTC] Act (15 U.S.C. 45(a)) that is associated with [] the treatment, cure, prevention, mitigation, or diagnosis of COVID-19." *See id.* at Section 1401(b)(1).

Because Congress provided a violation of the CCPA shall be considered a rule violation, the FTC may seek relief under Section 19(a)(1) without first obtaining a cease and desist order.  *See FTC v. Simple Health Plans LLC*, 2021 WL 4050819, *3 (S.D. Fla. Sept. 5, 2021) (holding "[b]ased on the plain language of § 19(a)(1), the Commission may proceed directly to court when a person violates certain rules without first conducting an administrative proceeding" and obtaining a cease and desist order pursuant to Section 19(a)(2)).

### 2. The FTC Has Alleged Facts Demonstrating Romero Made Representations Associated with the Prevention or Mitigation of COVID-19.

For the FTC to establish a violation under the CCPA, it must demonstrate: (1) Romero made representations on or after December 27, 2020 and during the pendency of the COVID-19 public health emergency; (2) the representations violated

11

Section 5(a) of the FTC Act; and (3) the representations were "associated" with the "treatment, cure, prevention, mitigation, or diagnosis of COVID-19." *See* Section 1401(b)(1).  The FTC has pled sufficient facts to set forth much more than "a plausible claim for relief under the CCPA." *Iqbal,* 556 U.S. at 679.

First, prior to December 27, 2020, HHS Secretary Azar declared a public health emergency that "remained in effect throughout the activities detailed [in the complaint]."  Complaint ¶7.  Accordingly, by asserting that Romero made deceptive representations from December 27, 2020 through March 21, 2021, Complaint ¶¶95, 119, the FTC satisfied its obligation to allege facts within the temporal period in the CCPA.

Second, the FTC pled sufficient facts to establish a violation of Section 5(a) of the FTC Act.  Congress directed the FTC to enforce the CCPA "in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the [FTC] Act . . . were incorporated into and made a part of this Act." *See* Public Law 116-260, 134 Stat. 1182, Title XIV at Section 1401(c)(2)(A).  Accordingly, as Romero concedes, *see* Mot. at 17, case law governing what constitutes "deceptive acts or practices" under Section 5(a) applies.  "To establish liability under section 5 of the [FTC Act], the FTC must establish that (1) there was a representation; (2) the representation was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation was material." *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003).

As to the first element, the Court must determine "whether the advertisers

12

made the claims asserted by the FTC in the complaint." *FTC v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1189 (N.D. Ga. 2008), *aff'd*, 356 F. App'x 358 (11th Cir. 2009). "The meaning of an advertisement, the claims or net impressions communicated to reasonable consumers, is fundamentally a question of fact." *Id.* "When assessing the meaning and representations conveyed by an advertisement, the court must look to the advertisement's overall, net impression rather than the literal truth or falsity of the words in the advertisement." *Id.*

Here, the FTC pled that Romero made both express and implied claims that the "Class N95" and "PM2.5" masks he sold were the same quality of facemask as an N95 mask, had been approved by NIOSH, possessed a filtration efficiency of greater than or equal to 95 percent, and could filter out particles as small as 0.075 microns in size. *See* Complaint ¶¶67, 68, 72, 74, 76, 78-81, 118-120.

As to the second element, a representation is likely to mislead consumers if it is false or if the advertiser lacks a reasonable basis for asserting that it is true. *FTC v. Roca Labs, Inc.*, 345 F. Supp. 3d 1375, 1386 (M.D. Fla. 2018). As to the third element, a representation is material if it is "likely relied upon by a reasonable prospective purchaser." *FTC v. Lanier Law, LLC*, 194 F. Supp. 3d 1238, 1274 (M.D. Fla. 2016) (internal citations omitted). "[C]laims are material if . . . they pertain to the central characteristics of a product such as those relating to its purpose[,] efficacy or [] safety." *In re Telebrands*, 140 F.T.C. 278, 292 (2005) (cleaned up). Additionally, express claims and deliberately made implied claims "are presumed to be material." *FTC v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1267 (S.D. Fla. 2007). Because

the claims here are false, Complaint ¶¶74-77, 82, they are likely to mislead a consumer.  These claims are also about the central characteristics of the "Class N95" and "PM2.5" facemasks, meaning they are material to consumers.[3]

Third, the claims were plainly associated with the treatment, cure, prevention, mitigation, or diagnosis of COVID-19.  Romero advertised and sold "anti-virus" and "micro-particle barrier" masks with "Virus Protection" functions after the CCPA took effect on December 27, 2020.  *Id.* ¶¶67-77 & Exs. J, K and M; *id.* ¶95.  Romero contends that the CCPA "does not apply to all 'viruses' categorically," Mot. at 17, and argues that these representations are not associated with COVID-19, Mot. at 19.  However, the context surrounding the FTC's allegations, which must be taken as true and for which inferences must be drawn in its favor, overwhelm this argument.  The FTC has alleged that Romero was "seeking to capitalize on demand for PPE because of the COVID-19 pandemic."  Complaint ¶¶8, 11-12.  Indeed, prior to the CCPA's enactment, Romero's website stated that there was "an unforeseen and unanticipated spike in the volume of orders which may affect our standard shipping/delivery times" as a "***consequence of the unprecedented novel coronavirus (COVID-19).***"  *Id*. ¶32 & Ex. E (emphasis added).  Additionally, his advertisements expressly linked his "antivirus [] masks" to the "coronavirus."  *Id.* ¶¶52-53 & Ex. F.

Common sense should not be left at the door.  Public health authorities have stressed the importance of wearing facemasks for the entirety of the pandemic to

---

[3] Because these claims are express or deliberately implied, they are also presumed to mislead consumers.

combat COVID-19.  The only reasonable inference to draw is that Romero was aware that his customers were purchasing facemasks from him to prevent or mitigate COVID-19, and that he made the specific "antivirus" and "Virus Protection" claims about his facemasks in order to motivate consumers to purchase from him.

This inference is bolstered by Romero's other conduct.  For example, as alleged in the Complaint, "[b]y no later than April 2020, [Romero] was aware that he must substantiate any express or implied claims he makes about the efficacy of a facemask, or any other antivirus property of a facemask."  Complaint ¶50. Nonetheless, he continued to describe his facemasks as an 'Anti-Virus Micro-Particle Barrier Respirator Mask' providing "Virus Protection," another Class N95 Mask as a "Micro-Particle Barrier," *id.* ¶70, and "describ[ing] his 'Class N95' masks as a 'protection class' of 'N95,' a 'safety standard' of 'NOISH [sic] 42 CFR 84,' and included images of masks stamped KN95, *id.*  ¶68 & Ex. J and K.

Despite defining "prevention" as "the act of preventing or hindering" and "mitigation" as "the process or result of making something less severe, dangerous, painful, harsh, or damaging," Mot. at 18, Romero somehow concludes that the CCPA is inapplicable to his actions.  Deceptively selling facemasks by falsifying their ability to prevent a deadly disease certainly qualifies as a deceptive act or practice "associated" with the "prevention" or "mitigation" of COVID-19.

### 3.    The CCPA Only Applies to Deceptive Acts on or After December 27, 2020.

Romero argues the Court should dismiss the FTC's claims under the CCPA

15

because "the CCPA does not apply retroactively."  Mot. at 20.  This argument is a red herring.  The Complaint is plain that the FTC seeks civil penalties only for violations of the FTC Act pursuant to the CCPA from December 27, 2020 onward. *See, e.g.*, Complaint ¶119 ("On or after December 27, 2020, Defendant made the representations set forth in Paragraph 118(f), (g), (h), and (i), which are associated with the treatment, cure, prevention, mitigation, or diagnosis of COVID-19.")

III.   **ROMERO'S MOTION TO DISMISS DOES NOT CHALLENGE THE SUFFICIENCY OF THE FTC'S CLAIMS FOR MONETARY RELIEF UNDER SECTION 19 OF THE FTC ACT FOR MITOR VIOLATIONS, NOR THE SUFFICIENCY OF THE FTC'S CLAIMS FOR CIVIL PENALTIES.**

Romero concludes by asking for "this action [to] be dismissed with prejudice." Mot. at 22.  However, while Romero has sought dismissal of both counts, he has only done so by moving to dismiss the injunctive relief sought under Section 13(b) of the FTC Act, and for monetary relief sought under Section 19 of the FTC Act pursuant to the CCPA.  *See* Mot. at 22.  He has not addressed the other relief the FTC seeks in this case.  Specifically, the FTC has requested that the Court "[a]ward such relief pursuant to Section 19 of the FTC Act as the Court finds necessary to redress injury to consumers resulting from [Romero's] violations of MITOR," Complaint at 37.  The FTC has also sought civil penalties under 15 U.S.C. § 45(m)(1)(A) for his violations of MITOR and the CCPA.  *See* Complaint at 37-38. Thus, there is no basis to dismiss those portions of the Commission's complaint.[4]

---

[4] Although Romero does not challenge the sufficiency of the FTC's civil penalty allegations, he misstates the standard for civil penalty liability.  *See* Mot. at 12

16

## IV.   **CONCLUSION**

Romero's motion to dismiss should be denied.

Dated:  September 20, 2021

/s/ Christopher J. Erickson
Christopher J. Erickson (cerickson@ftc.gov)
Michael P. Mora (mmora@ftc.gov)
Federal Trade Commission
600 Pennsylvania Avenue, NW, CC-9528
Washington, DC 20580
202-326-3671 (Erickson); -3373 (Mora); -3197
(facsimile)

### CERTIFICATE OF SERVICE

I hereby certify that, on September 20, 2021, a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

/s/ Christopher Erickson
Christopher Erickson

---

(stating that when the FTC seeks civil penalties pursuant to Section 5(m)(1)(A) of the FTC Act, "the defendant must have acted with 'actual knowledge' that the act or practice is 'unfair or deceptive' and prohibited by the Commission.")  The standard is actually that the individual must have acted "with actual knowledge *or knowledge fairly implied on the basis of objective circumstances* that such act is unfair or deceptive and is prohibited by such rule."  *See* 15 U.S.C. §45(m)(1)(A) (emphasis added).