**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**CASE NO.: 5-21-cv-343**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

FRANK ROMERO,

Defendant
_____________________________________/

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

Defendant, Frank Romero ("Romero" or "Defendant"), by and through the undersigned law firm, hereby files his Reply in Support of his Motion to Dismiss ("Motion") [D.E. 9] the Federal Trade Commission's ("FTC") Complaint [D.E. 1], and in support thereof states as follows:

## I. Introduction

In the wake of *AMG Capital*, the FTC is repeating its tactics of broadly construing narrow statutes to create theories of liability. For instance, despite taking no court action over the past year, the FTC now improperly sues under § 13(b) for injunctive relief *without showing any imminent violation of law*. Similarly, the FTC invites this Court to loosely read the CCPA in a patent attempt to bypass the onerous requirements set forth in § 5. But just like in *AMG Capital*, this Court should halt the FTC's attempts to deviate from the law's clear, narrow, language. Indeed, contrary to the pleading requirements, the FTC's Response confirms that it is purely speculating when it claims Romero "is about to violate" the law. Thus, there is no claim under § 13(b). Further, the FTC's naked allegations that Romero made unlawful representations **associated** with the "treatment, cure, prevention, mitigation or diagnosis" of COVID-19 are wholly conclusory. As the Court may not accept mere conclusions dressed as facts,[1] there is no CCPA claim.

## II. Section 13(b)'s "Reason to Believe" Does Not Excuse the FTC From the Pleading Standards Prescribed By the Federal Rules of Civil Procedure.

The FTC takes the remarkable position that it is an agency determination to decide whether § 13(b) is properly pled, with judicial review limited to whether the FTC's allegations are made in bad faith. [D.E. 11, p. 4]. Not so. Not only is the

[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

prohibition against bad faith a standard in *every* FTC pleading,[2] but federal courts routinely reject attempts by the FTC to derogate from Rule 8's pleading standard for claims brought under § 13(b). *See, e.g.*, *Fed. Trade Comm'n v. Facebook, Inc.*, No. CV 20-3590 (JEB), 2021 WL 2643627, at *19 (D.D.C. June 28, 2021) (rejecting FTC's "reason to believe" argument, finding Rule 8 requires the FTC to make a plausible showing that the defendant "is violating" or "is about to violate" law) (citing *Shire ViroPharma, Inc.*, 917 F.3d 147, n. 17 (3d Cir. 2019) ("declining to address argument that FTC has 'unreviewable discretion to file suit' because it was not raised below, but expressing view that it is 'unpersuasive'")); *Fed. Trade Comm'n v. AdvoCare Int'l, L.P.*, No. 4:19-CV-715-SDJ, 2020 WL 6741968, at *5 (E.D. Tex. Nov. 16, 2020) ("[T]here is no reason to conclude that Congress intended to eliminate judicial scrutiny under Rule 8. The cases that the FTC cites do not support its argument that its internal, "reason to believe" determination is an effective 'King's X' against a motion to dismiss a Section 13(b) complaint . . . For example, *Standard Oil*[3] addressed a challenge by an oil company to ***an administrative proceeding*** initiated by the FTC . . . .") (emphasis added).

---

[2] Fed. R. Civ. P. 11.

[3] Just like in *AdvoCare*, here, this Court should also disregard the case law proffered by the FTC in its Response at Footnote Two as those cases concern administrative proceedings, which is not applicable here. [D.E. 11, p. 5].


**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

Moreover, given that all facts in a complaint are taken as true on a 12(b) motion, even the "bad faith" ones, the FTC seeks a guarantee that every pleading claiming a "reason to believe" must survive dismissal. *See id.*

Second, given the clear language of § 13(b), as a whole, the FTC's knowledge of a defendant's past acts does not swallow the necessity of still plausibly alleging *present* conduct showing a *future* threat of an imminent violation of law. *See Shire ViroPharma, Inc.*, 917 F.3d at 159 ("Instead, 'is' or 'is about to violate' means what it says—the FTC must make a showing that a defendant is violating or is about to violate the law."). Otherwise, the FTC is encouraged to take no action, while allowing would-be defendants to continue their seemingly unlawful ways, then sue to recover a greater monetary award all while seeking injunctive relief, too.

## III. <u>The FTC Has Not Plausibly Pled Romero "is About to Violate" the Law under § 13(b)</u>.

"[T]he scope of equitable relief that a provision authorizes 'remains a question of interpretation in each case.'" *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 141 S. Ct. 1341, 1350 (2021). *AMG Capital* supports the interpretation that § 13(b) is forward looking and, thus, the facts in support of injunctive relief should also be based on forward looking actions; because, the precise purpose for § 5 is for past acts. *See id.* at 1349.

Here, the FTC alleges absolutely no present act, other than pure naked assertions, that Romero "is about to violate" the law based on "future threat of

recurrence". [D.E. 11, p. 9]. Even after the FTC conducted months of investigations (including an investigative hearing with Romero), the closest *present* act alleged by the FTC to support its *current* beliefs is that Romero's trendeploy.com website is operational – a fact common to virtually every modern-day business. *Id.* Accordingly, until the FTC's speculations materialize into actual facts,[4] such that the FTC can plausibly say Romero is *presently* acting in a way that indicates an *imminent* violation of law, the FTC *currently* has not plausibly alleged a basis to seek a permanent injunction.

Furthermore, contrary to the FTC's argument, there is no "pattern of reoccurrence." *See Shire ViroPharma, Inc.*, 917 F.3d at 156-57 ("[T]he FTC ignores that the 'about to violate' and 'likelihood of recurrence' standards coexist. The 'about to violate' pleading requirement – which is applied right out of the gate—is not inconsistent with the likelihood of recurrence standard, which a court uses to determine the FTC's entitlement to an injunction."). Not once does the FTC allege that Romero acted in any repeat manner. Instead, the FTC complains that Romero did not "take down fast enough" his social media ads or website pages – but this is not "reoccurring" action. Moreover, *Hornbeam* is entirely distinguishable to this case because, unlike here, there, the alleged wrongful scheme spanned for

[4] Telling, during the ongoing months of investigating Romero, the FTC did not even attempt to seek a temporary or preliminary injunction, presumably because no plausible facts even exist(ed) to even support that initial relief.



COLE, SCOTT & KISSANE, P.A.
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

six years, which included prior violations of a court order, where the defendants were held in contempt due to those repeat violations 391 F. Supp. 3d at 1221.

Similarly, "voluntary cessation" misses the mark for purposes of pleading a § 13(b) claim. As the FTC concedes, "voluntary cessation" goes to whether Romero has *mooted* the lawsuit, but not to whether the FTC has met its Rule 8 obligations in the first place (standing),[5] as mootness applies *after* litigation has commenced. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 188-93 (2000) (dispelling confusion regarding "voluntary cessation," which pertains to mootness after litigation commenced, not whether standing exists to raise the claim in the first place).

## IV. **The CCPA Does Not Apply Because the FTC Provides No Facts That Romero Made Unlawful Claims "Associated" with COVID-19.**

Concerning the CCPA, Section 19(a)(1)'s rule prerequisite is not met because there are no plausible allegations to support any unlawful claim made by Romero that was associated with COVID-19. As such, to the extent the FTC seeks monetary damages for its cited allegations related to viruses, "micro-particle barriers" or "virus protection," [*see* D.E. 11, p. 14], then the FTC is forced to first comply with § 5's strict requirements before suing for monetary relief under § 19(a)(2).

[5] Standing may be raised at any time in a case. *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1313 (S.D. Fla. 2019).


COLE, SCOTT & KISSANE, P.A.
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

The "elephant" in the FTC's CCPA argument is to create a new path for monetary relief and avoid the § 5 process. First, despite the FTC's smokescreen argument, broadly alleging deceptive representations occurring between December 27, 2020 through March 21, 2021, ***without tying in a deceptive representation associated with COVID-19,*** does not, by itself, trigger the CCPA. [D.E. 11, p. 12]. If that were the law, every business that seemingly violated § 5, during that time frame, would be subject to the less onerous prerequisites for suit under § 19(a)(1). Instead, an unlawful claim must be made during those dates, and that unlawful claim must be made with the prohibited associations to COVID-19.

Second, the FTC's expansive CCPA definition for "association" fairs no better. To illustrate, broadly claiming that Romero sought to capitalize on PPE does not transform his actions within the scope of the CCPA, because seeking to capitalize, by itself, is not making a prohibited "association" with COVID-19. *Id.* If the FTC had its way, every company selling products tangentially-related to COVID-19 could fall within the scope of CCPA, regardless of whether there was any unlawful claim made by that business which associated the claim to the "treatment, cure, prevention, mitigation or diagnosis" of COVID-19. Moreover, while the FTC responds (but does not actually allege in its complaint)[6] that

[6] Presumably realizing the deficiencies in its pleading, the FTC's Response cites unpled facts to further support the "association" with COVID-19. But this Court may not rely on facts or unreasonable inferences beyond the four-corners of the Complaint. This includes rejecting the

public health authorities "stressed" wearing facemasks to combat COVID-19, this is entirely irrelevant for purposes of whether *Romero* made any CCPA representations that associated his facemasks with COVID-19. Second, notifying customers of shipping delays because of supply chain impacts from COVID-19 is not a fact sufficient to mean there is a claim association with COVID-19. Again, if such a loose interpretation satisfied "association," then any business who provided an e-mail notice to its customers about business interpretations in the wake of COVID-19 are equally subject to the CCPA. Finally, the sole example that the FTC cites for "expressly link[ing]" Romero's facemask to COVID-19 comes at Paragraph 52, which was well before the CCPA was enacted. In fact, the FTC now concedes that the CCPA does not apply for actions prior to the enactment of the CCPA and that it is not seeking such relief. [D.E. 11, p. 15]. Thus, without more, Paragraph 52 provides no factual support as it relates to stating a claim under the CCPA for purposes of invoking §19(a)(1).

## **CONCLUSION**

For the reasons stated herein and in Romero's Motion, this Court should grant Romero's Motion to Dismiss.

---

FTC's notion that Romero was aware that his customers were purchasing facemasks from him to "prevent" or "mitigate" COVID-19, and that he made the specific "antivirus" and "Virus Protection" claims about his facemasks in order to motivate consumers to purchase from him. [D.E. 11, p.15.].


COLE, SCOTT & KISSANE, P.A.
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of October, 2021, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant Frank Romero*
Cole, Scott & Kissane Building
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33256
Telephone (561) 383-9203
Facsimile (305) 373-2294
Primary e-mail: cody.german@csklegal.com
Secondary e-mail: ryan.weiss@csklegal.com
Secondary e-mail: justin.maya@csklegal.com

By: s/ Cody German
CODY GERMAN
Florida Bar No.: 58654
RYAN WEISS
Florida Bar No.: 114479
JUSTIN S. MAYA
Florida Bar No.: 126087