**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

FRANK ROMERO, individually and also d/b/a Trend Deploy, Trendeploy, trendeploy, trendeploy.com, Frank Romero Advertising, and Uvenux,

Defendant.

CASE NO. 5:21-cv-343-BJD-PRL

# PRELIMINARY INJUNCTION

Plaintiff, the Federal Trade Commission ("FTC"), has moved, pursuant to Federal Rule of Civil Procedure 65, for a temporary asset freeze, other equitable relief, and an order to show cause why a preliminary injunction should not issue against Defendant Frank Romero. *See* Doc. 100 ("TRO Motion"). On July 31, 2024, the Court granted that motion. *See* Docs. 101 and 101-1 ("TRO"). The Court subsequently held a preliminary injunction hearing on August 13, 2024.

## FINDINGS

The Court, having considered Plaintiff's TRO Motion, declarations, exhibits, and the memorandum of points and authorities filed in support thereof; the testimony at the preliminary injunction hearing; the arguments

of the parties at the preliminary injunction hearing; and being otherwise advised, finds that:

A. This Court has jurisdiction over this case, and venue is proper in this district. See Doc. 63 at 2.

B. On or about November 3, 2020, Defendant learned of Plaintiff's investigation into Defendant's marketing of face masks through his business, Trend Deploy.

C. On or about February 16, 2021, Defendant learned of Plaintiff's draft Complaint alleging that Defendant had engaged in deceptive acts and practices in violation of Sections 5(a) and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45(a), 52, and of the FTC's Trade Regulation Rule Concerning the Sale of Mail, Internet, or Telephone Order Merchandise ("MITOR"), 16 C.F.R. Part 435.

D. On June 29, 2021, Plaintiff filed its Complaint for Civil Penalties, Permanent Injunction and Other Relief. See Doc. 1 ¶ 1.

E. On February 20, 2023, the Court issued a Minute Order informing the parties that it intended to grant Plaintiff's motion for summary judgment. See Doc. 60.

F. On February 27, 2023, the Court issued an Order setting forth its ruling on Plaintiff's motion for summary judgment. See Doc. 61. The Court granted Plaintiff's motion and directed Plaintiff to file a proposed judgment consistent with the Court's ruling. See id. at 36–37.

G. On March 23, 2023, Plaintiff filed its proposed injunction, proposed judgment for monetary relief under Section 19 of the FTC Act, and proposed civil penalty judgment. See Doc. 62.

H. On May 15, 2023, the Court issued its Final Judgment and Order for Permanent Injunction. See Doc. 63. Inter alia, the Court entered a monetary judgment against Defendant in the amount of $989,483.69 as monetary relief under Section 19 of the FTC Act for his violations of MITOR. See id. § VII.

I. As of August 13, 2024, Defendant has not paid any portion of that monetary judgment.

J. There is good cause to believe, since learning of the FTC's investigation on or about November 3, 2020, Defendant has engaged in fraudulent transfers and conversions of real property and other assets to prevent the FTC from returning to consumers assets obtained through his violative conduct. Defendant's asset dissipation increased in frequency and amount after February 27,

2023, when the Court issued its order granting the FTC's motion for summary judgment. Defendant's efforts have continued post-judgment and there is good cause to believe he will continue to engage in such efforts.

K. There is good cause to believe Plaintiff will not receive full and truthful information from Defendant or his wife, Patricia Martinez, through post-judgment discovery pursuant to Federal Rule of Civil Procedure 69(a)(1) and Section XIII of the Final Judgment and Order for Permanent Injunction. See Doc. 63 at 25.

L. There is good cause to believe that Romero will dissipate assets unless he continues to be restrained and enjoined by order of this Court; and that, in accordance with Rule 65(b) and Local Rule 6.02.

M. Weighing the equities and considering Plaintiff's likelihood of success in its forthcoming action to unwind the fraudulent transfers and conveyances executed by Romero, an asset freeze and other equitable relief is in the public interest.

N. This Court has authority to issue this Order pursuant to Federal Rule of Civil Procedure 65 and the All Writs Act, 28 U.S.C. § 1651.

O. No security is required of any agency of the United States for issuance of a preliminary injunction. See Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. **"Asset"** means any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held.

B. **"Corporate Fraudulent Transfer Defendants"** means ARPA Real Estate LLC; Kayak Rental Silver Springs LLC; and each of their subsidiaries, affiliates, successors, and assigns.

C. **"Defendant"** means Frank Romero.

D. **"Document"** is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), see Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check

registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

E. **"Electronic Data Host"** means any person or entity in the business of storing, hosting, or otherwise maintaining electronically-stored information. This includes, but is not limited to, any entity hosting a website or server and any entity providing "cloud based" electronic storage.

## ORDER

## I. ASSET FREEZE

**IT IS THEREFORE ORDERED** that Defendant and his officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from:

A. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

1. owned or controlled, directly or indirectly, by Defendant;
2. held, in part or in whole, for the benefit of Defendant;
3. in the actual or constructive possession of Defendant; or
4. owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed, or controlled by Defendant.

These Assets include, but are not limited to:

1. The real property located at 17 Sapphire Road, Ocala, Florida 34472;
2. The real property located at 1825/1827 NE 17th Street, Ocala, Florida 34470;
3. The real property located at 78 Hemlock Drive, Ocala, Florida 34472;
4. The real property located at 9554 Bahia Road, Ocala, Florida 34472;

5. The proceeds from the sale of the following properties to Dalchand Laljit and Omadai Laljit:

   a. 00 SW 22nd LOOP #Lot 8, Ocala, Florida 34481

   b. 00 SW 22nd LOOP #Lot 9, Ocala, Florida 34481

   c. 00 SW 22nd LOOP #Lot 10, Ocala, Florida 34481

6. The proceeds from the sale of 00 SW 22nd LOOP #Lot 11, Ocala, Florida 34481, to Emran Alli and Rajdai Alli;

7. Any cash withdrawn from the following bank accounts from November 3, 2020, to present:

   a. The J.P. Morgan Chase Bank N.A. account ending in 3100; and

   b. The J.P. Morgan Chase Bank N.A. account ending in 5013;

8. The following accounts at J.P. Morgan Chase Bank N.A.:

   a. The account in the names of Frank Romero and Patricia Martinez ending in 3100; and

   b. The account in the name of ARPA Real Estate LLC ending in 5013;

9. The CitiBank N.A. account in the names of Frank Romero and Patricia Martinez ending in 4377;

10. The Citizens Bank, N.A. account in the name of Frank Romero ending in 2528;

11. The following accounts at The Vanguard Group, Inc.:

    a. The account in the name of Frank Romero ending in 2436; and

    b. The account in the names of Frank Romero and Patricia Martinez ending in 8910;

12. The MidFirst Bank account in the name of Frank Romero ending in 1869;

13. The following accounts at Wells Fargo Bank, N.A.:

    a. The account in the names of Frank Romero and Patricia Martinez ending in 4960;

    b. The account in the names of Frank Romero and Patricia Martinez ending in 5939;

    c. The account in the names of Frank Romero and Patricia Martinez ending in 6329; and

    d. The account in the name of Kayak Rental Silver Springs LLC ending in 9514;

B. Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of Defendant or subject to access by Defendant;

C. Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by Defendant or of which Defendant is an officer, director, member, or manager. This includes any corporate bankcard or corporate credit card account for which Defendant is, or was on the date that this Order was signed, an authorized signor; or

D. Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of Defendant on or before July 25, 2024.

The Assets affected by this Section shall include: (1) all Assets of Defendant as of the time this Order is entered; and (2) Assets obtained by Defendant after this Order is entered if those Assets are derived from any activity that is the subject of Plaintiff's TRO Motion or that is prohibited by this Order. These Assets shall be held in constructive trust for the sole benefit of the FTC and consumers harmed by Defendant's MITOR violations, so that the FTC can disburse Assets to these consumers.

## II. DUTIES OF ASSET HOLDERS AND OTHER THIRD PARTIES

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party

processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service or otherwise) that:

(a) has held, controlled, or maintained custody, through an account or otherwise, of any Document on behalf of Defendant or any Asset that has been: owned or controlled, directly or indirectly, by Defendant; held, in part or in whole, for the benefit of Defendant; in the actual or constructive possession of Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by Defendant;

(b) has held, controlled, or maintained custody, through an account or otherwise, of any Document or Asset associated with credits, debits, or charges made on behalf of Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or

(c) has extended credit to Defendant, including through a credit card account, shall:

A. Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal

of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court; provided, however, that this provision does not prohibit Defendant from incurring charges on a personal credit card established prior to entry of this Order, up to the pre-existing credit limit;

B. Deny any person access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of Defendant, either individually or jointly, or otherwise subject to access by Defendant;

C. Provide Plaintiff's counsel, within three (3) days of receiving a copy of this Order, a sworn statement setting forth, for each Asset or account covered by this Section:

1. The identification number of each such account or Asset;

2. The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

3. The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of Defendant, or is otherwise subject to access by Defendant; and

D. Upon the request of Plaintiff's counsel, promptly provide Plaintiff's counsel with copies of all records or other Documents pertaining to each account or Asset covered by this Section, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

E. The Assets referred to in this section include, but are not limited to:

1. The real property located at 17 Sapphire Road, Ocala, Florida 34472;

2. The real property located at 1825/1827 NE 17th Street, Ocala, Florida 34470;

3. The real property located at 78 Hemlock Drive, Ocala, Florida 34472;

4. The real property located at 9554 Bahia Road, Ocala, Florida 34472;

5. The proceeds from the sale of the following properties to Dalchand Laljit and Omadai Laljit:

   a. 00 SW 22nd LOOP #Lot 8, Ocala, Florida 34481

   b. 00 SW 22nd LOOP #Lot 9, Ocala, Florida 34481

   c. 00 SW 22nd LOOP #Lot 10, Ocala, Florida 34481

6. The proceeds from the sale of 00 SW 22nd LOOP #Lot 11, Ocala, Florida 34481 to Emran Alli and Rajdai Alli;

7. Any cash withdrawn from the following bank accounts from November 3, 2020, to present:

   a. The J.P. Morgan Chase Bank N.A. account ending in 3100; and

   b. The J.P. Morgan Chase Bank N.A. account ending in 5013;

8. The following accounts at J.P. Morgan Chase Bank N.A.:

   a. The account in the names of Frank Romero and Patricia Martinez ending in 3100; and

   b. The account in the name of ARPA Real Estate LLC ending in 5013;

9. The CitiBank N.A. account in the names of Frank Romero and Patricia Martinez ending in 4377;

10. The Citizens Bank, N.A. account in the name of Frank Romero ending in 2528;

11. The following accounts at The Vanguard Group, Inc.:

    a. The account in the name of Frank Romero ending in 2436; and

    b. The account in the names of Frank Romero and Patricia Martinez ending in 8910;

12. The MidFirst Bank account in the name of Frank Romero ending in 1869; and

13. The following accounts at Wells Fargo Bank, N.A.:

    a. The account in the names of Frank Romero and Patricia Martinez ending in 4960;

    b. The account in the names of Frank Romero and Patricia Martinez ending in 5939;

    c. The account in the names of Frank Romero and Patricia Martinez ending in 6329; and

    d. The account in the name of Kayak Rental Silver Springs LLC ending in 9514.

## III. FINANCIAL DISCLOSURES

**IT IS FURTHER ORDERED** that Defendant, within five (5) days of service of this Order upon him, shall prepare and deliver to Plaintiff's counsel:

A. Completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for Defendant, and **Attachment B** (Financial Statement of Corporate Defendant) for each Corporate Fraudulent Transfer Defendant; and

B. Completed **Attachment C** (IRS Form 4506, Request for Copy of a Tax Return) for each Corporate Fraudulent Transfer Defendant.

## IV. SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of Defendant, or that may be subject to any provision of this Order pursuant to Federal Rule of Civil Procedure 65(d)(2). For purposes of this

Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## V. CORRESPONDENCE AND SERVICE ON PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

Christopher J. Erickson
Hanna L. St. Marie
600 Pennsylvania Avenue, NW, Mail Stop CC-6316
Washington, DC 20580
cerickson@ftc.gov
hstmarie@ftc.gov

## VI. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**DONE** and **ORDERED** in Jacksonville, Florida, this 13th day of August, 2024.

BRIAN J. DAVIS
United States District Judge